**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| KIKIFER'S ENTREPRENEURIAL ACADEMY, KEISHONDA WILLIAMSON, and HENRY McDAVID, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 25 C 50082 |
| WINNEBAGO COUNTY COMMUNITY HEALTH BOARD, REGION 1 PLANNING COUNCIL, WINNEBAGO COUNTY, ILLINOIS, and WINNEBAGO COUNTY COMMUNITY HEALTH BOARD MEMBERS, | ) ) ) ) ) ) ) ) | Judge Rebecca R. Pallmeyer |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In March 2020, voters in Winnebago County, Illinois, approved a sales tax increase to fund mental health services in the county. Defendant Winnebago County Community Health Board ("the Board") was tasked with administering $89 million of these funds, and in 2022, began to distribute grants via a competitive application process. Plaintiff Kikifer's Entrepreneurial Academy ("KEA"), a private school founded and led by African Americans, applied for one of these grants, but the Board rejected the application, ostensibly because KEA's "financial history was incongruent with the amount of requested funding." In this lawsuit, KEA alleges the Board's denial of its grant application was in fact a function of race discrimination. KEA and two of its staff members, Keishonda Williamson and Henry McDavid, have sued the Board and other municipal entities alleged to play a role in the grant denial process. They assert claims under Illinois and federal civil rights statutes, including the Illinois Civil Rights Act of 2003, 740 ILCS 23/5; Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; as well as 42 U.S.C. §§ 1981, 1983 & 1985. Plaintiffs have voluntarily amended their complaint several times. The Defendants have moved to dismiss the most recent iteration, arguing that the individual Plaintiffs lack standing, and that

KEA's complaint fails to state a claim for relief. As explained below, the motions are granted and the complaint is dismissed without prejudice.

## BACKGROUND

The facts laid out below are taken from Plaintiffs' Third Amended Complaint [44], which the court must accept as true at the pleading stage. *Esco v. City of Chicago*, 107 F.4th 673, 678 (7th Cir. 2024).

Kikifer's Entrepreneurial Academy "is a community-based, African American-led private educational institution located in Rockford, Illinois." (Third Am. Compl. ("TAC") [44] ¶ 3.) The school offers "youth-centered academic programming, entrepreneurship education, and holistic support and mental health services," and primarily serves African American youth. (*Id.*) On three occasions—August 8, 2024, September 8, 2024, and October 26, 2024—KEA applied for a grant from the Winnebago County Community Health Board for mental health funding.[1] (*Id.* ¶ 45.) In support of its grant applications, KEA produced dozens of supportive letters from community members, some of whom offered live testimony at Board meetings in support of the applications.[2] (*Id.* ¶¶ 46–50.) The grant applications were prepared, at least in part, by Keishonda Williamson and Henry McDavid, two educators employed by KEA. Ms. Williamson is African American, but Mr. McDavid's race is unstated. (*Id.* ¶¶ 60–61.)

The Board rejected all three of KEA's applications—the first was denied on September 4, 2024, and the second two met the same fate on December 4, 2024.[3] (*Id.* ¶ 45.) The complaint

---

[1] Plaintiffs do not state how much money they requested or what they planned to do with it, but contemporary press accounts suggest they intended to construct a specialized facility for mental health treatment. *See* Brea Walters, *Rockford Private School Asks for Mental Health Funding*, WFIR CW (Jan. 2, 2025, at 17:34 CST), https://www.wifr.com/2025/01/02/rockford-private-school-asks-mental-health-funding/.

[2] The Third Amended Complaint does not state the date these meetings took place, nor does it identify the community members that allegedly offered testimony. (*See* Third Am. Compl. [44] ¶¶ 49–50.)

[3] The Third Amended Complaint states that the applications were denied on these two dates, but does not explicitly specify which applications were denied on which dates. Because

does not reference any sort of appeal process, so it appears that the Board's denial was final. The reasons for the denial are unclear; KEA claims that the Board officially reasoned that KEA's "financial history was incongruent with the amount of requested funding," but provides no additional detail on KEA's funding request or financial history. (*Id.* ¶ 69.) Regardless, KEA argues that the official explanation is pretextual; in KEA's view, the Board's reason for denying the application rested on prejudice against African Americans. Whether KEA believes that a similarly underfunded Caucasian-led organization would have been more favorably treated is not clear. But the Complaint alleges that the Board adopted a preference for financial congruency that, while ostensibly neutral, was designed to disqualify African Americans. According to KEA, African American-led institutions have "limited cash reserves due to historical underfunding and ongoing discrimination," serve clients who "often lack insurance or have Medicaid with lower reimbursement rates," and invest in "cultural competency training and community engagement that generates no direct revenue." (*Id.* ¶¶ 71–74.) KEA has alleged that Defendants were aware of the historic challenges KEA faces and favored applications from well-financed organizations as a pretext to discriminate against African Americans. (*Id.* ¶ 77.) KEA also claims that Defendants generally evaluated applications using "undefined and subjective evaluation standards" that "favored white-led institutions" and "devalued forms of community support essential to African American-led organizations" such as grassroots support from community members. (*Id.* ¶¶ 83–86.) Defendants ultimately disbursed over $89 million to organizations that were "white-led," but nothing to "Black-led providers", despite "numerous . . . comprehensive funding applications" having been submitted by groups led by African Americans. (*Id.* ¶¶ 86–87.)

This lawsuit resulted. Plaintiffs filed the initial version of their Complaint on February 24, 2025, without the assistance of counsel. KEA is an institution that must be represented by an attorney, *see Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 857–58 (7th Cir. 2011), but Mr.

---

only the August 8 application could have existed on September 4, the court assumes that the remaining two applications were rejected on December 4.

McDavid and Ms. Williamson, neither of whom are lawyers, sought the court's permission to appear on their employer's behalf, asserting that "KEA has been systemically denied funding, rendering it unable to afford private legal counsel." (Motion for Non-Attorney Appearance [22] at 1.) After the court denied this request [37], counsel appeared on Plaintiffs' behalf [39] and filed a Third Amended Complaint [44]. This Complaint alleges violations of the Illinois Civil Rights Act, 740 ILCS 23/5 (Count I), the Equal Protection Clause pursuant to 42 U.S.C. § 1983 (Count II), and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d (Count III). It also alleges that Defendants incurred municipal liability under 42 U.S.C. § 1983 (Count IV), conspired to violate civil rights, 42 U.S.C. § 1985(3) (Count V), and discriminated in contracting on the basis of race, 42 U.S.C. § 1981 (Count VI). Defendants have moved to dismiss all counts pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6) [51, 55, 58], Plaintiffs opposed [61, 62, 63], and Defendants replied [64, 65, 68]. The motions are now fully briefed.

## ANALYSIS

### I. Article III Standing

Defendants argue, first, that Plaintiffs Keishonda Williamson and Henry McDavid, two employees of KEA, lack standing to pursue this action.

Article III of the U.S. Constitution "confines" the jurisdiction of the federal courts "to 'Cases' and 'Controversies.' " *FDA v. All. For Hippocratic Med.*, 602 U.S. 367, 378 (2024). For there to be a "Case" or a "Controversy," each plaintiff in federal court must demonstrate standing—a "personal stake" in the case. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). The "irreducible constitutional minimum" of standing consists of three elements: (1) a concrete, particularized injury in fact, (2) caused by the defendant, (3) that would likely be redressed by judicial action. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs bear the burden of establishing this requirement. *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020). But because Defendants have made a facial attack to standing, the court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the

4

complaining party." *Silha v. ACT, Inc.,* 807 F.3d 169, 173 (7th Cir. 2015) (citations and internal quotation marks omitted).

At issue in this case is the concreteness requirement. To proceed in federal court, Plaintiffs must allege a concrete injury that is "real, and not abstract." *Patterson v. Howe*, 96 F.4th 992, 996 (7th Cir. 2024) (citation omitted). To meet this standard, the asserted injury must be one with a "close relationship" to a harm that is "traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 417. This includes tangible harms, such as monetary loss or physical injury, but also certain intangible harms that have been traditionally remedied by the common law, such as defamation, intrusion upon seclusion, or the disclosure of private information. The key question is whether the asserted harm has a "close historical or common-law analogue"—an "exact duplicate" is unnecessary. *Ewing v. MED-1 Solutions, LLC*, 24 F.4th 1146, 1151 (7th Cir. 2022) (citing *TransUnion*, 594 U.S. at 424–25).

Williamson and McDavid lack standing because they have not explained how they suffered concrete harm. The Complaint alleges that Ms. Williamson and Mr. McDavid are educators employed by KEA who were responsible for preparing the grant applications at issue in this case. (TAC ¶¶ 13–14.) They do not claim they were harmed financially by the grant denial,[4] rather, they vaguely assert they suffered "severe emotional and psychological harm" after the applications were denied. (*Id.* ¶¶ 60–65.) This clearly does not pass muster. The Seventh Circuit has repeatedly considered various vaguely defined psychological injuries, including confusion, stress, and worry, and has found such injuries insufficient to establish Article III standing. *See, e.g.*, *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 941 (7th Cir. 2022) (psychological harm "induced by a debt collector's letter" is not concrete); *Gunn v. Thrasher, Buschmann & Voelkel, P.C.*, 982 F.3d 1069, 1071 (7th Cir. 2020) ("infuriation or disgust" not concrete harms); *cf.*

---

[4] Even if they had alleged, for instance, that KEA could have increased their compensation if they had successfully obtained the grant, such a "harm" would be too speculative because it relies on the actions of a third-party.

*Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462–63 (7th Cir. 2020) (Barrett, J.) (unwanted text messages qualify as concrete because they are similar to the common law "intrusion upon seclusion" tort). The same applies here—it was their *employer*'s grant that was denied, not their own, so they cannot show that they personally suffered a concrete harm.

Williamson and McDavid might suggest they suffered a dignitary or stigmatic harm, but this runs into similar challenges. It is of course true that a claim of race discrimination is cognizable in the federal courts, even absent any financial or physical consequence. *Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833–34 (7th Cir. 2019); *see also Allen v. Wright*, 468 U.S. 737, 756 (1984) (observing that race discrimination is "not only judicially cognizable" but also "one of the most serious injuries recognized in our legal system," citing *Brown v. Board of Education*, 347 U.S. 483 (1954)). But, again, plaintiffs asserting stigmatic harms must still show that the discrimination affected them on a personal level, *Satanic Temple, Inc. v. Rokita*, 163 F.4th 1061, 1070 (7th Cir. 2026), and Williamson and McDavid have not done so. The operative complaint simply alleges that KEA's grant application was denied because it is an African American-led organization, and that Williamson and McDavid are "educator[s] employed by KEA." (TAC ¶¶ 13, 14, 109.) There is no allegation that either individual is a member of the organization's leadership, or that Williamson's race (McDavid's race is not clear) played a role in Defendants' decision to deny the grant. Absent this information, the claims of the individual Plaintiffs are dismissed without prejudice.

## II. Sufficiency of the Complaint

To survive a Rule 12(b)(6) challenge, a complaint need only "allege 'enough facts to state a claim to relief that is plausible on its face.'" *Fosnight v. Jones*, 41 F.4th 916, 921–22 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 922 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). At this stage in the litigation, the court accepts as true all well-

pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014).

In addition to these familiar standards, the court is mindful of Rule 8(a), which directs that a complaint be a "short and plain statement of the claim showing that the pleader is entitled to relief." The Third Amended Complaint does not appear to meet this standard. The claims are difficult to pin down, and the sprawling complaint focuses largely on extraneous details about inequities in mental healthcare that may at some point have evidentiary value but are not sufficient to state a claim. (*E.g.*, TAC ¶¶ 5, 38–44, 74–78.) The Complaint also merges claims for relief; it is difficult to tell, for example, whether Plaintiffs are offering a disparate impact theory, a disparate treatment theory, or some combination of the two.

Nor is it clear who, exactly, harmed KEA. The court presumes that some of the allegations are aimed at the Board, the entity that allegedly denied the grant application. But other Defendants are listed as well, and the Complaint suffers from the problem of "group pleading," a practice where allegations are made collectively against all Defendants using vague language that does not specify the role that each Defendant played in the case. Group pleading is not *per se* impermissible—there is "no 'group pleading' doctrine, per se, that either permits or forbids allegations against defendants collectively." *Robles v. City of Chicago*, 354 F. Supp. 3d 873, 875 (N.D. Ill. 2019). But a complaint must include enough specificity so that each defendant has "fair notice of what . . . the claim is and the grounds upon which it rests." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)); *see also Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("Each defendant is entitled to know what he or she did that is asserted to be wrongful."). In other words, "the key is to generally name the 'persons responsible for the problem.'" *Cosby v. Rodriquez*, 711 F. Supp. 3d 983, 997–98 (N.D. Ill. 2024) (quoting *Hyung Seok Koh v. Graf*, No. 11-cv-02605, 2013 WL 5348326, at *4 (N.D. Ill. Sept. 24, 2013)).

7

Group pleading is pervasive throughout the Third Amended Complaint. Plaintiffs lump Defendants (each a different government agency) together without explaining the specific role that each played in denying the grant. For example, the Third Amended Complaint states that "Defendants imposed financial prerequisites that predictably excluded organizations providing culturally competent care" (TAC ¶ 68), and alleges that "Defendants denied KEA funding [using] a facially neutral justification that masks racial exclusion." (*id.* ¶ 69). Plaintiffs thus assert that *someone* denied their grant application for race-based reasons—or for facially neutral reasons that have a disparate impact on the basis of race. But the Complaint does not specify which Defendant did what, leaving the court guessing about the role that each played in the scheme. This lack of specificity makes it impossible for the court to analyze, or Defendants to respond to, the allegations made here. It does not give Defendants fair notice, and dismissal is appropriate. *See Knight*, 725 F.3d at 818 ("A complaint based on a theory of collective responsibility must be dismissed.")

The court dismisses the Third Amended Complaint without prejudice. Plaintiffs have already amended their complaint several times, but the court will allow a further pleading, and directs that a Fourth Amended Complaint be filed within 28 days. The allegations in this document (1) should focus exclusively on the acts of wrongdoing that are alleged to violate the statutes at issue in this case; (2) should omit any extraneous or redundant details that are not relevant to the claim; (3) should identify any discriminatory policies, or facially neutral policies that have disparate impact, that are alleged to have resulted in the grant denial; (4) and should identify the dates and actors involved in adopting the challenged policies, denying KEA's applications, or engaging in other unlawful acts.

### CONCLUSION

Defendants' motions to dismiss [51, 55, 58] are granted. As explained herein, Plaintiffs have leave to file a Fourth Amended Complaint within 28 days. This Amended Complaint should specify the actions each individual Defendant is alleged to have committed and should otherwise

adhere to Rule 8's direction to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Defendants' responsive pleading will be due 21 days thereafter.

ENTER:

Dated: March 3, 2026

_____

REBECCA R. PALLMEYER
United States District Judge